IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,          )<br>                                                              )<br>            Plaintiff,                            )<br>                                                              )<br>vs.                                                        )<br>                                                              )<br>JESUS L. LEON and FABIAN LOPEZ, )<br>                                                              )<br>            Defendants.                      )<br>_____ ) | No. CR 10-2104-TUC-CKJ (DTF)<br><br>**ORDER** |

On March 4, 2011, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation (Doc. 68) in which he recommended that the Motion to Suppress (Doc. 19) filed by Fabian Lopez ("Lopez") be denied. The Report and Recommendation notified the parties that they had fourteen days from the date of being served with the copy of the Report and Recommendation to serve and file any objections. Lopez has filed an objection (Doc. 71). Jesus L. Leon ("Leon") has a Motion/Notice of Joinder (Doc. 72). A response has not been filed.

*Reasonable Suspicion to Stop Truck*

The Fourth Amendment prohibition against unreasonable searches and seizures extends to brief investigatory stops of persons or vehicles. *Terry v. Ohio*, 392, US. 1, 9 (1968). An investigatory stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). This "reasonable suspicion"

1 must consist of specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity. *Cortez*, 449 U.S. at 416-18.

Defendants set forth innocent explanations for some of the facts that the magistrate judge found formed the basis for a determination of reasonable suspicion to stop the vehicle. Defendants assert that, while the truck was a flat bed construction vehicle with no load, trucks do not load at the end of the day unless they are suppliers. Further, the truck had concrete smeared on it like all vehicles that deliver powdered concrete for mixing – the spattered concrete and mud was consistent with being at a construction site during a rainy day. Moreover, while the driver appeared nervous, the agent could not describe what constituted nervous behavior. Additionally, although Defendants were wearing construction vests, Defendants point out that there was construction in the area and anyone at a construction site wears a helmet and vest pursuant to OSHA regulations.[1] However, the United States Supreme Court has stated that a "determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277, 122 S.Ct. 744, 753 (2002).

Furthermore, additional facts must be considered with Defendants' summary. When testifying that the truck did not have a payload, Border Patrol Agent Cody J. Adams ("Adams") stated that it seemed odd to him because there were not any straps, pulls, or anything to indicate that it was "doing any type of construction or cement work. RT 12/13/10, pp. 20-21. Adams further testified:

> Well, when I first observed it there was more cement on the license plate and it was clearly marked, or smeared – well, kind of what the – you can see the taillight above it, you could see that somebody smeared it down trying to just throw us off, make it look legit, but the license plate, particularly the front half, was almost unreadable.

RT 12/13/10, p. 26; *see also* RT 12/13/10, pp. 135-36 (testimony of Agent Snyder). In other words, as summarized by the magistrate judge, the concrete and mud appeared to be smeared

---

[1]The Objections actually state that anyone at a construction site wears a helmet and "visits[.]" The Court accepts this to mean "vest[.]"

- 2 -

1  on the truck in an unnatural pattern.  Adams also acknowledged that people do not typically
2  look at him when he passes a vehicle and, although the driver of the truck did not look at
3  him, he testified that the driver had a guilty look on his face.

4  Further, Adams testified:

> . . . And due to my past experience I have apprehended them and been on apprehensions with individuals trying to blend in with every day construction workers, make it look like they're doing something to kind of throw us off.  And from what I could see through the window, which was very visible, he didn't appear to be dirty or anything. And the – and the back of the truck was dirty.  So it was clear that – that he would have been dirty if he was doing something.
>
> * * * * *
>
> Q (AUSA):   And had – had you seen people on State Route 82 ever – ever driving wearing an orange vest?
>
> A (Adams):  Yes, I've seen them on State Route 82, but they were typically in a marked vehicle, like a county vehicle, conducting some type of road work along the road, not just driving a truck that wasn't marked for – for no apparent reason.

13  RT 12/13/10, pp. 21-22.

14  Additionally, evidence was presented that the vehicle was traveling below the speed
15  limit, the checkpoint was closed because of the rain, there is an increase in smuggling activity
16  when the checkpoint is not operational, the vehicle was in a known smuggling route, the
17  initial contact occurred during a shift change, there is an increase in smuggling activity
18  during shift changes, and it appeared there was a false bottom below the flatbed.  The Court
19  finds that, in interpreting the totality of the circumstances in light of a trained officer's
20  experience, *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996), "[s]pecific,
21  articulable facts which, together with objective and reasonable inferences, form a basis for
22  suspecting that the [occupants in the truck] . . . [were] engaged in criminal activity[.]"  *United
23  States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989), *citation omitted*; *see
24  also United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574 (1975), *United States v.
25  Diaz-Juarez*, 299 F.3d 1138, 1141 (9th Cir. 2002), *United States v. Arvizu*, 217 F.3d 1224
26  (9th Cir. 2000), *overruled on other grounds*; *United States v. Chavez-Valenzuela*, 268 F.3d
27  71(9th Cir. 2001).  The Court agrees with the magistrate judge that the agents had reasonable
28  suspicion to stop the truck.

*Probable Cause to Search Truck*

A warrantless "search is per se illegal unless it falls within an exception to the [F]ourth [A]mendment's warrant requirement." *United States v. Ojeda*, 276 F.3d 486, 488 (9th Cir. 2002), *citing Katz v. United States*, 389 U.S. 347, 357 (1967); *see also Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (warrantless searches are per se unreasonable "subject only to a few specifically established and well delineated exceptions."). One such exception is that a warrantless search may be conducted of a lawfully stopped vehicle if there is probable cause to believe it contains contraband. *United States v. Ross*, 456 U.S. 798, 799, 825 (1982); *see also Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009) (noting there are other exceptions to the warrant requirement for vehicle searches, besides the search-incident exception, including probable cause to believe a vehicle contains criminal activity evidence); *California v. Carney*, 471 U.S. 386, 394-95 (1985).

Defendants assert, however, that probable cause did not exist to search the truck. Defendants point out that there was no smell, visual observations, or advanced information to form the basis for probable cause. Probable cause for seizure exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place and is evaluated in light of the totality of the circumstances. *United States v. Pinela-Hernandez*, 262 F.3d 974 (9th Cir. 2001). "Probable cause requires "'a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life,'" that contraband or evidence would be found in the place to be searched." *United States v. Perez*, 67 F.3d 1371, 1375 (9th Cir. 1995), *citations omitted* (stale information four days old eviscerated probable cause for warrantless search of vehicle), *quoting United States v. George*, 883 F.2d 1407, 1412 (9th Cir. 1989) and *United States v. Robertson*, 606 F.2d 853, 858 (9th Cir. 1979), *withdrawn in part on other grounds*, 116 F.3d 840 (1997).

Although there were no visual observations of the contraband, Adams and Border Patrol Agent Cody Snyder ("Snyder") looked under the truck and observed an area spot welded together. Indeed, Snyder testified:

> . . . But I – I went underneath the vehicle to inspect it for myself. And I noticed that between the frame rails there was sheet metal all the way up to the cab and the sheet metal was spot welded together. And to – to me that seemed even more odd because if that's how the manufacturer had built that truck and intended it to – to be, they wouldn't just be spot welded, they would be welded completely across in a professional manner. At that point I also tapped on the what I now believe to be a false compartment and pushed against it and it – it didn't sound hollow. And also when I pushed against it there was something obstructing.

RT 12/13/10, pp. 133-34; *see also* RT 12/13/10, p. 32 (testimony of Adams). Considering the totality of the circumstances, including these observations, along with facts supporting the stop, the unusual splatter, and the information gained from speaking to Defendants, the Court finds there was a fair probability that contraband would be found in the truck. The Court agrees with the magistrate judge that the agents had probable cause to search the truck.

Accordingly, after an independent review, IT IS ORDERED:

1. The Motion/Notice of Joinder (Doc. 72) is GRANTED;

2. The Report and Recommendation (Doc. 68) is ADOPTED, and;

3. The Motion to Suppress (Doc. 19) is DENIED.

DATED this 22nd day of April, 2011.

_____
Cindy K. Jorgenson
United States District Judge